[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff husband, Scott Goff, began this action for a dissolution of the parties' marriage on the ground of irretrievable breakdown by writ and complaint returnable to this court May 10, 1994. He also sought a fair and equitable property settlement, and other relief, as on file.
The defendant wife, Katherine Goff, admitted all of the allegations in the complaint. In her cross complaint, she also sought a dissolution of the marriage on the ground of irretrievable breakdown, an equitable distribution of the marital assets and other relief, as on file.
The parties were represented by counsel throughout these proceedings; each testified, and submitted financial affidavits and proposed orders. Some documents were introduced CT Page 2842 into evidence and counsel made oral argument.
From the evidence, I find as follows: The parties married each other July 20, 1991, in New London, Connecticut. The wife's birth name was Katherine Shea. The wife resided in this state continuously for at least one year before the date of the complaint. There are no minor children issue of the marriage and none have been born to the wife since the marriage. Neither party is a recipient of public assistance. All statutory stays have expired. This court has jurisdiction.
The husband is 36 years old, a college graduate with a degree in accounting and in good health. He holds a sea captain's license (for ferry boats and other ships) and has taken courses towards a master's degree. He now works as an insurance adjuster and earns $575 per week gross, $414 per week net. He has a retirement plan which is not yet vested. He has had earnings in the area of $40,000 per annum when working at sea.
The wife is 40 years of age, a high school graduate, with one year of college. She has back problems. She has worked for General Dynamics (Electric Boat) for about 21 years. She is an engineering assistant and earns $731 per week gross with overtime, $441 per week net. She has a pension plan and a deferred compensation plan which are employment related and fully vested. The wife also receives net rental income from her duplex home of $127 per week. She has a daughter from a prior relationship who is now 18.
This marriage of less than four years was in difficulty almost from its beginning. The husband was out to sea for periods of time. During the times the couple was home together, the wife claimed he was hard to live with and threw tantrums. They had arguments over money, her daughter from a previous relationship, and whether the husband should have an interest in the wife's home owned by her long before this marriage.
The husband claims the causes of the disintegration of the marriage related to his increasing distrust of the wife as a result, in part, of a 1993 house mortgage refinancing transaction conducted by a power of attorney from him to her, and in which the title to the home was placed in both names as joint tenants. Some time after the mortgage refinancing was CT Page 2843 consummated, the wife, with the power of attorney, caused the title to be reconveyed into her name alone, where it now remains.
The plaintiff's participation in the 1993 mortgage transaction resulted in both an increase in the mortgage indebtedness on the home, a decrease in the mortgage interest rate, and a net decrease in the monthly mortgage payment.
He found a note in her purse written by her to another person, which indicated that she may have been having an affair. She denied any infidelity.
The couple attempted marriage counseling which was unsuccessful. The husband left the home in the spring of 1994 and went to California where he now resides. The wife admits having a relationship with another man, but claims it began in October, 1994, after the parties finally separated.
On the state of this evidence, I find the marriage to be irretrievably broken down, and that each party must bear substantial responsibility for its destruction.
The parties commingled their funds in a joint checking account. They each have substantial earning capacity.
The husband claims that he is entitled to compensation for work and materials provided by him to the wife's home. There was credible evidence that approximately $4,000 of joint funds was used for various improvements to the home. There was also credible evidence that the husband expended substantial labor in making the improvements. There was no credible evidence of the incremental increase in value, if any, which resulted from the home improvements or of any increase in value in the home during the marriage.
The wife claims that the husband has been sufficiently compensated for his contributions to the marriage because a joint bank account of $13,000 has already been equally divided. She also asserts that by means of a loan on her SSIP plan of over $9,500, she repaid substantial debts of the parties, including some joint debts and some solely the husband's.
The plaintiff was unemployed for about nine months during the marriage and received unemployment compensation. He CT Page 2844 was also out on a medical disability for about five months and received disability income. During the first years of the marriage, the husband's earnings exceeded the wife's; during the latter part of the marriage, until the parties separated, their total incomes were approximately equal. The husband contributed minimally to the house mortgage and other expenses after June, 1993.
The wife did all of the cooking, cleaning and grocery shopping and other homemaking chores; the husband did repairs, lawn care and other maintenance. The wife contributed $13,000 from two personal injury settlements to the marital funds. The husband claims to have come into the marriage with about $13,000 in cash, but there was no corroborating evidence of such.
Neither party sought alimony from the other. The plaintiff seeks, in his claims for relief, that the wife be ordered to refinance the home mortgage in order to relieve him from any prospective liability on the mortgage note. He has produced no credible evidence as to whether such refinancing is practicable, given the defendant's present earnings. Nor has he produced evidence as to the cost of such refinancing, the prospective interest rate, monthly payment, or the amount of mortgage funds which might be available to the defendant based on the present value of her home. The defendant has made all of the mortgage payments as they became due since the plaintiff left the home. I find his claim for relief without merit, especially since there appears to be equity of at least $50,000 in the home. Thus, any deficiency judgment liability he may face is entirely speculative. His claim that his ability to procure a mortgage to buy a home for himself is impaired by his remaining on the wife's mortgage in view of the wife's regular payments and the home equity is also speculative.
I have considered all of the statutory criteria in General Statutes §§ 46b-62, 46b-81 and 46b-82 in the light of the above evidence and findings, in the determination of the financial awards set forth below.
Accordingly, a decree shall enter dissolving the marriage on the ground of irretrievable breakdown. Orders shall also enter as follows:
(1) No alimony is awarded to either party. CT Page 2845
(2) The defendant wife shall take and have the following real and personal property, which is assigned to her: 170 Liberty Street, (Pawcatuck) Stonington, Connecticut, and the personal property, furniture and furnishings therein; the 1992 Ford truck; her bank accounts, savings bonds, SSIP plan and her pension plan. She shall pay the home mortgage and truck loan and all of the liabilities shown on her financial affidavit, and indemnify and save the husband harmless therefrom.
(3) The plaintiff husband shall take and have the following property, which is assigned to him: the 1987 Chevrolet motor vehicle; the personal property now in his possession; his checking account, his pension and one half of the china received by the couple as wedding gifts. The wife shall ship the items to the husband; each shall pay one half (1/2) of the expense. She shall execute and deliver to him a note in the amount of $2,500, without interest secured by second mortgage on the premises at 170 Liberty Street, Stonington. Said note and mortgage shall be payable as follows: $500 on or before December 1, 1995; and $500 on December 1st annually thereafter, until paid; provided that, if defendant dies, remarries, or sells the mortgaged premises, or fails to pay any of said installments within ten days of the due date, or is in default of the first mortgage,[1] then any unpaid balance shall be immediately due and payable. The mortgage note shall contain a provision for attorney's fees and cost of collection in the event of default.
(4) Each party shall pay his or her own attorney's fees.
(5) The wife's birth name of Shea is restored to her.
(6) All documents necessary or incidental to the effectuation of these orders, and the transfer of personal property, shall be consummated within thirty (30) days hereof.
Teller, J.